751 A.2d 1153

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Abdul M. ZHAHIR, Appellant.**

Supreme Court of Pennsylvania.

Submitted Oct. 18, 1999.

Decided May 19, 2000.

John W. Packel, L. Roy Zipris, Philadelphia, for Abdul M. Zhahir.

Catherine Marshall, Philadelphia, Jeffrey M. Krulick, for the Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## *OPINION*

SAYLOR, Justice.

The issues in this case concern police decisions to stop, frisk, and seize contraband from Appellant.

On March 4, 1992, at approximately 5:30 p.m., Officers Singletary and Corely of the Philadelphia Police Department were advised by their captain that a male, wearing a green jacket and blue jeans, was selling narcotics at 60th and Lansdowne Avenue in Philadelphia. The source of the captain's information is unknown. Two and one-half hours later, the officers proceeded to the designated area in a marked police cruiser and observed Appellant, Abdul Zhahir ("Zhahir"), standing in front of a Chinese restaurant, wearing clothing matching the description. Upon seeing the officers, Zhahir turned, walked into the restaurant, and appeared to throw something on the floor with his left hand. The officers were able to view Zhahir's actions through the window and door to the restaurant, and such conduct was consistent with the officers' experience that individuals trafficking in narcotics often attempt to abandon their contraband when seen by the police. The officers drove past the restaurant and began to turn their vehicle around, at which point, they noticed Zhahir exiting the restaurant and looking both ways. When the officers pulled in front of the restaurant, Zhahir had his back to them and was bending over to retrieve something from the

floor in the same area where previously he appeared to have discarded an item. Officer Singletary got out of the vehicle and approached Zhahir, who turned to face the officer with his left hand in his jacket pocket. Officer Singletary asked Zhahir what was in his pocket, immediately grabbed Zhahir's left hand and pocket at the same time, and "felt what formed the consistency of a bundle of caps" (vials of cocaine). Officer Singletary then seized a plastic bag from Zhahir's jacket pocket, which contained 98 vials of crack cocaine, the total weight of which was 3.70 grams. Zhahir was charged with unlawful possession of a controlled substance and unlawful possession with intent to deliver a controlled substance. *See* 35 P.S. § 780-113(a)(16), (30).

Prior to trial, Zhahir moved to suppress, arguing that the police lacked reasonable suspicion to stop him and, in the alternative, that in seizing the drugs, Officer Singletary exceeded the scope of a permissible frisk for weapons. The trial court denied the motion, finding that the information the officers received from their captain, the fact that Zhahir matched the description, and Zhahir's suspicious activity upon observation provided a reasonable suspicion that criminality was afoot. The trial court also determined that the seizure of the contraband was proper pursuant to the "plain feel" doctrine, as it occurred during a permissible frisk for weapons, and the perceived consistency of the vials, the surrounding circumstances, and Officer Singletary's experience allowed him to reasonably conclude that what he felt was a controlled substance. Following a jury trial, Petitioner was found guilty and was sentenced to a period of incarceration of three to six years. On appeal, the Superior Court affirmed in a memorandum opinion, reasoning that the stop of Zhahir was justified based upon the information provided to the officers and Zhahir's suspicious behavior, police had not exceeded the permissible scope of the frisk for weapons, and the seizure of the drugs was permissible under the plain feel doctrine. This Court allowed appeal to consider whether the plain feel doctrine harmonizes with Article I, Section 8 of the Pennsylvania Constitution.

■ Before reaching the application of the plain feel doctrine, however, we consider whether the stop and frisk were warranted in the first instance.[1] Our "inquiry is a dual one—whether the officers' action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio*, 392 U.S. 1, 19–20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968), *quoted in Commonwealth v. Hicks*, 434 Pa. 153, 158, 253 A.2d 276, 279 (1969). Regarding the stop, a police officer may, short of an arrest, conduct an investigative detention if he has a reasonable suspicion, based upon specific and articulable facts, that criminality is afoot. *See Terry*, 392 U.S. at 21, 30, 88 S.Ct. at 1880, 1884; *Commonwealth v. Allen*, 555 Pa. 522, 527, 725 A.2d 737, 740 (1999). The fundamental inquiry is an objective one, namely, whether "the facts available to the officer at the moment of the [intrusion] 'warrant a man of reasonable caution in the belief' that the action taken was appropriate." *Terry*, 392 U.S. at 21–22, 88 S.Ct. at 1880 (citations omitted). This assessment, like that applicable to the determination of probable cause, requires an evaluation of the totality of the circumstances, *see United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981), with a lesser showing needed to demonstrate reasonable suspicion in terms of both quantity or content and reliability. *See Alabama v. White*, 496 U.S. 325, 330–31, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990).

■ Zhahir contends that Officer Singletary lacked reasonable suspicion to conduct an investigative detention, emphasizing that the origin and basis of the information provided by the officers' captain were never revealed and no further investigation was done (independent of the encounter with Zhahir) to corroborate its reliability. In addition, Zhahir maintains that his mere presence in the vicinity two and one-half hours later and his innocent behavior in dropping and

1. When reviewing a suppression ruling, an appellate court determines whether the record as a whole supports the suppression court's factual findings and whether the legal conclusions drawn from such findings are free of error. *See In re D.M.*, 556 Pa. 160, 162, 727 A.2d 556, 557 (1999).

retrieving an item in a Chinese restaurant did not provide sufficient corroboration to support reasonable suspicion.

■ Where, as here, the source of the information given to the officers is unknown, the range of details provided and the prediction of future behavior are particularly significant, as is corroboration by independent police work. *See White,* 496 U.S. at 332, 110 S.Ct. at 2417. While verification of predictive information constitutes one avenue of obtaining the necessary corroboration of information from a source of unknown reliability, *see id.,* the necessary corroboration may also be supplied by circumstances that are independent of the tip, for example, observation of suspicious conduct on the part of the suspect. *See Allen,* 555 Pa. at 529, 725 A.2d at 741. *See generally United States v. Roberson,* 90 F.3d 75, 80 (3 rd Cir.1996)(noting that in the context of an anonymous tip, the absence of predictive information would not necessarily invalidate it as a consideration in the totality of the circumstances, if, after corroborating readily observable facts, police had observed unusual or suspicious conduct on the suspect's part). In this regard, the time, street location, and the movements and manners of the parties bear upon the totality assessment, *see Commonwealth v. Lawson,* 454 Pa. 23, 28, 309 A.2d 391, 394 (1973), as does an officer's experience. *See Commonwealth v. Banks,* 540 Pa. 453, 455, 658 A.2d 752, 753 (1995).

In the present case, while the information provided by the police captain did not include a range of details or indicate future behavior and was not acted upon immediately, Officers Singletary and Corely did confirm the location and description of the suspect. More important, the officers observed suspicious and furtive behavior (Zhahir's retreat and abandonment upon observation of police, surveillance of the street upon the officers' passing, and subsequent retrieval of the discarded item) that, in their experience, was consistent with the behavior exhibited by others dealing in narcotics.[2] Such suspicious conduct in an area associated with criminal activity provided

---

**2.** Officer Singletary testified that, during previous arrests made in this particular area, close to ninety percent of drug dealers attempted to abandon their contraband.

independent corroboration of the essential allegation of the information and, thus, suggested that criminality may have been afoot. *See Illinois v. Wardlow,* —— U.S. ——, ——, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000) (explaining that an area of expected criminal activity is a relevant contextual consideration, as is nervous or evasive behavior, in determining reasonable suspicion). Of additional consequence, Officer Singletary was confronted with an individual whose actions appeared to be consistent with retrieval of a weapon from his pocket. In light of the totality of this information, the officers were justified in conducting an investigative detention.

Zhahir further questions the propriety of Officer Singletary's physical seizure of his hand and pocket, asserting that such action impermissibly exceeded the bounds of a *Terry* frisk, since the officer did not first ask any questions to dispel any suspicions or conduct a traditional pat-down search. Officer Singletary, however, testified that he grabbed Zhahir's hand to ensure that he was not reaching for a gun, which testimony was credited by the suppression court. We will therefore consider the officer's actions within the framework of a traditional weapons frisk.

Review of an officer's decision to frisk for weapons requires balancing two legitimate interests: that of the citizen to be free from unreasonable searches and seizures; and that of the officer to be secure in his personal safety and to prevent harm to others. *See Dunaway v. New York,* 442 U.S. 200, 209, 99 S.Ct. 2248, 2255, 60 L.Ed.2d 824 (1979). To conduct a limited search for concealed weapons, an officer must possess a justified belief that the individual, whose suspicious behavior he is investigating at close range, is armed and presently dangerous to the officer or to others. *Terry,* 392 U.S. at 24, 88 S.Ct. at 1881; *Allen,* 555 Pa. at 528, 725 A.2d at 740. In assessing the reasonableness of the officer's decision to frisk, we do not consider his "unparticularized suspicion or 'hunch,' but [rather] ... the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Terry,* 392 U.S. at 27, 88 S.Ct. at 1883.

■■ Here, the officers were investigating an allegation of narcotics trafficking and confronted Zhahir in an area known for drug activity at eight o'clock in the evening. Moreover, Zhahir's suspicious behavior appeared to have been in response to police presence and, when encountered, he turned to face the officer with his left hand in his pocket. As noted, Officer Singletary testified that his subsequent actions were based on a concern that Zhahir might be retrieving a weapon from his pocket; in view of the immediacy of the situation confronting the officer, common sense dictates that preference be given to his personal safety. *See generally Adams v. Williams*, 407 U.S. 143, 148, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972)(concluding that officer's "action in reaching to the spot where a gun was thought to be hidden constituted a limited intrusion designed to insure his safety"); *Terry*, 392 U.S. at 33, 88 S.Ct. at 1886 (stating that "there is no reason why an officer, rightfully but forcibly confronting a person suspected of a serious crime, should have to ask one question and take the risk that the answer might be a bullet"); *Commonwealth v. Lagana*, 517 Pa. 371, 377, 537 A.2d 1351, 1354 (1988). Accordingly, the officer was justified in believing that Zhahir may have been armed and in acting as he did to restrain Zhahir's hand and determine whether Zhahir's pocket contained a weapon.[3]

■■■ Having concluded that the stop and frisk were proper, we turn to the seizure of the contraband. As noted, the purpose of the frisk under *Terry* is not to discover evidence, but to allow the officer to pursue his investigation without fear of violence. *See Adams*, 407 U.S. at 146, 92 S.Ct. at 1923. In keeping with such purpose, the frisk must be limited to that necessary for the discovery of weapons. *Terry*, 392 U.S. at 26, 88 S.Ct. at 1882. The United States Supreme

**3.** Zhahir further claims that the trial court and the Superior Court improperly took judicial notice that guns and drugs are necessarily associated in concluding that the decision to frisk was justified. Since, however, the pertinent facts and circumstances justified the officer's actions, a discussion of this argument is unnecessary at this point. The issue is developed *infra*, however, as part of Zhahir's policy argument respecting the adoption of the plain feel doctrine under the Pennsylvania Constitution.

Court has held, however, that an officer may also properly seize non-threatening contraband detected through the sense of touch during a protective frisk for weapons. *Minnesota v. Dickerson*, 508 U.S. 366, 373, 113 S.Ct. 2130, 2136, 124 L.Ed.2d 334 (1993). In so holding, the Court adopted what it characterized as the plain feel doctrine, explaining it as a corollary to the plain view doctrine. *See id.* at 376–77, 113 S.Ct. at 2137–38. In the federal arena, plain feel applies to validate a seizure of contraband other than a weapon where an officer is lawfully in a position to detect it; its incriminating nature is immediately apparent from its tactile impression; and the officer has a lawful right of access to the object. *See id.* at 373–75, 113 S.Ct. at 2136–37.

Zhahir acknowledges the applicability of plain feel as a matter of Fourth Amendment jurisprudence. He argues, however, that the doctrine cannot be sustained consistent with Article I, Section 8 of the Pennsylvania Constitution, as permitting an exception to *Terry*—already an exception to the probable cause requirement—would undermine the defense of individual privacy and security against unjustified police conduct. In addition, Zhahir maintains that the adoption of plain feel "would turn a narrow exception to the probable cause and warrant requirements into a facile excuse for further, more coercive intrusions into citizen's (sic) very bodies[,] ... would be impossible to enforce, and would require courts to analyze increasingly arcane distinctions of fact without meaningful guidance."

Although in recent cases decided under the Fourth Amendment, this Court recognized the plain feel doctrine and addressed its parameters, *see Commonwealth v. E.M.*, 558 Pa. 16, 32, 735 A.2d 654, 663 (1999); *Commonwealth v. Stevenson*, 560 Pa. 345, 352–56, 744 A.2d 1261, 1265–67 (2000), the full Court has not determined whether it can be reconciled with the privacy-based orientation of Article I, Section 8 of the Pennsylvania Constitution. In his concurring opinion in *In re S.J.*, 551 Pa. 637, 713 A.2d 45 (1998), however, Mr. Justice Cappy set forth the requisite analysis, which entails examination of: 1) the text of the Pennsylvania constitutional provi-

sion; 2) the history of the provision, including Pennsylvania case law; 3) related case law from other jurisdictions; and 4) policy considerations, including unique issues of state and local concern, and applicability within modern Pennsylvania jurisprudence. *See S.J.*, 551 Pa. at 648, 713 A.2d at 50 (Cappy, J., concurring)(citing *Commonwealth v. Edmunds*, 526 Pa. 374, 390, 586 A.2d 887, 895 (1991)).

With regard to the first and second considerations, Justice Cappy acknowledged the similarity between the texts of Article I, Section 8 and the Fourth Amendment,[4] but emphasized the focus of Article I, Section 8 upon personal privacy interests, which distinguishes the provision from its federal counterpart and serves to define the scope of the exclusionary rule. *Id. See generally Commonwealth v. Mason*, 535 Pa. 560, 569, 637 A.2d 251, 256 (1993); *Edmunds*, 526 Pa. at 394, 586 A.2d at 897.[5] Justice Cappy then turned to this Court's jurisprudence involving *Terry*, which has been adopted by this Court, *see Hicks*, 434 Pa. at 157, 253 A.2d at 278; recognized as establishing the appropriate standard governing the availability of an investigative detention in Pennsylvania, *see Commonwealth v. Jackson*, 548 Pa. 484, 489, 698 A.2d 571, 573 (1997);

**4.** The Fourth Amendment of the United States Constitution provides:
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
Article I, Section 8 of the Pennsylvania Constitution, encaptioned "Security from searches and seizures," provides:
The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

**5.** The exclusionary rule provides a remedy to protect the rights created by the United States and Pennsylvania Constitutions. The Fourth Amendment's exclusionary rule has been construed by the United States Supreme Court as serving solely a deterrent purpose, *see United States v. Leon*, 468 U.S. 897, 916, 104 S.Ct. 3405, 3417, 82 L.Ed.2d 677 (1984), whereas the exclusionary rule under Article I, Section 8 has been interpreted by this Court to serve the purposes of safeguarding privacy and ensuring that warrants are issued only upon probable cause. *See Edmunds*, 526 Pa. at 389, 586 A.2d at 899.

and adhered to against arguments that seizures should be permitted on less than reasonable suspicion, *see Commonwealth v. Rodriguez,* 532 Pa. 62, 71, 614 A.2d 1378, 1382 (1992) (declining to recognize a "justifiable detention because of the asserted need for greater police powers to combat the war on drugs"); *Commonwealth v. Lovette,* 498 Pa. 665, 675–76, 450 A.2d 975, 980 (1982).

▮ Significantly, this Court has also recognized and followed Fourth Amendment jurisprudence respecting the doctrine from which plain feel derives, namely, plain view. Pursuant to the plain view doctrine, when an officer is lawfully in a position to view an item, the incriminating nature of which is immediately apparent, he may legitimately seize that item. *See Harris v. United States,* 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067 (1968); *Commonwealth v. Davenport,* 453 Pa. 235, 243–44, 308 A.2d 85, 89 (1973). Concerns similar to those raised by Zhahir, in particular, that a plain view seizure should not be used to turn an initially valid and limited search into a general one, have been addressed in the context of the plain view doctrine. *See Horton v. California,* 496 U.S. 128, 137–38, 110 S.Ct. 2301, 2308, 110 L.Ed.2d 112 (1990)(quoting *Coolidge v. New Hampshire,* 403 U.S. 443, 469–71, 91 S.Ct. 2022, 2040–41, 29 L.Ed.2d 564 (1971)). As the United States Supreme Court has explained, "the doctrine serves to supplement the prior justification ... and permits the warrantless seizure." *Coolidge,* 403 U.S. at 466, 91 S.Ct. at 2038. The prior justification is either a search conducted pursuant to a warrant or a recognized exception to the warrant requirement. Because a search conducted with a warrant is limited to those items and areas particularly described, and a warrantless search is circumscribed by the exigency justifying its initiation, adherence to these limitations adequately serves the purpose of preventing a limited search from becoming a general one. *See Horton,* 496 U.S. at 139–40, 110 S.Ct. at 2309–10. Thus, while the plain view doctrine relates to the seizure of the item, which bears upon the interests of possession and ownership, *see Coolidge,* 403 U.S. at 515, 91 S.Ct. at 2062–63 (White, J., concurring and dissenting), the privacy

interest of the owner is not implicated since the object is in plain view. *See Texas v. Brown*, 460 U.S. 730, 738 n. 4, 103 S.Ct. 1535, 1541 n. 4, 75 L.Ed.2d 502 (1983)(plurality opinion)(explaining that "it is important to distinguish plain view as used in *Coolidge* to justify the seizure of an object, from an officer's mere observation of an item left in plain view[;] whereas the latter generally involves no Fourth Amendment search, the former implicates the Fourth Amendment's limitations upon seizures of personal property").

■ This reasoning applies with equal force to the plain feel doctrine, pursuant to which a seizure is justifiable only if the officer has identified particular facts and circumstances from which he can reasonably infer that the suspect may be armed; the resulting search is then limited to a frisk for concealed weapons; and the seizure of non-threatening contraband is further limited to only those items immediately apparent as such upon tactile impression. Because the existing requirements under *Terry* serve to limit the scope and duration of the search, and because the plain feel seizure applies solely to items immediately apparent as contraband, the privacy interests of the suspect are not further compromised by recognition of the plain feel doctrine. *See generally S.J.*, 551 Pa. at 652, 713 A.2d at 51 (Cappy, J., concurring).

Moreover, as Justice Cappy recognized in *S.J.*, a majority of other jurisdictions have adopted the plain feel doctrine as articulated in *Dickerson*. *See id.* at 651–52, 713 A.2d at 52 (collecting cases). *See generally* Annotation, *Application of "Plain Feel" Exception to Warrant Requirements–State Cases*, 50 A.L.R.5 [th] 581, §§ 3–4 (2000).[6] Indeed, New York remains the only jurisdiction to have rejected the plain feel doctrine, which occurred in a decision issued prior to *Dickerson*. *See People v. Diaz*, 81 N.Y.2d 106, 595 N.Y.S.2d 940, 612 N.E.2d 298, 302 (1993).[7] In reaching its conclusion, the *Diaz*

6. When reviewing the decisions of other jurisdictions, we consider their rationale as opposed to their numerical weight. *See Commonwealth v. Matos*, 543 Pa. 449, 459–50, 672 A.2d 769, 775 (1996).

7. Although the *Diaz* court rested its analysis upon federal authority, the court stated that its conclusions were equally premised upon indepen-

court reasoned that the sense of touch is less reliable than the sense of sight, and that allowing police to expand weapons searches in the hunt for other contraband fosters potential abuses. *See id.* Significantly, other states have addressed similar arguments in evaluating the plain feel doctrine under their respective state constitutions. For example, in *State v. Trine*, 236 Conn. 216, 673 A.2d 1098 (1996), the Connecticut Supreme Court reasoned:

> Whether the sense of touch is a reliable investigative tool depends upon the circumstances in which it is used. ... Contraband may well possess tactile characteristics that, to a trained and experienced police officer, are as discernable and distinctive as a familiar sight, odor, taste or sound.

\* \* \*

> The constitutional acceptance of patdown searches for weapons belies the contention that the sense of touch is inherently less reliable than the other senses. The very premise underlying patdown searches, which we have expressly approved under our state constitution, is that officers will be able to detect the presence of weapons through the sense of touch.

\* \* \*

> We are persuaded that existing restrictions on the use of information obtained during a lawful patdown search adequately protect individual privacy interests. ...In addition, the officer's belief that the object is contraband must be objectively reasonable in light of all of the circumstances known at the time of the search. The conclusion drawn by the officer that an object is contraband is subject to judicial review of the reasonableness of the conclusion and the officer's compliance with established constitutional requirements.

dent state grounds. *See Diaz*, 595 N.Y.S.2d 940, 612 N.E.2d at 302 n. 2.

*Id.* at 1108–09 (internal quotations omitted) (citations omitted); *accord Commonwealth v. Crowder,* 884 S.W.2d 649, 652 (Ky.1994)(concluding that limited application of the plain feel doctrine does not violate Section 10 of the Kentucky Constitution). *See generally Dickerson,* 508 U.S. at 376, 113 S.Ct. at 2137 (stating that "[t]he very premise of *Terry,* after all, is that officers will be able to detect the presence of weapons through the sense of touch"). We find this rationale compelling, and conclude that the concerns articulated in *Diaz* do not warrant departure from the general consensus of opinion on this issue.

Zhahir also raises several additional policy considerations, first suggesting that the doctrine is impractical and open to abuse. Contrary to Zhahir's contention, however, the plain feel doctrine is not impractical, difficult to apply, or readily subject to police excess or abuse. Although particular fact paradigms may result in differing applications of plain feel, the same concern exists, in similar form, throughout the area of law governing search and seizure. *See generally Ornelas v. United States,* 517 U.S. 690, 696–98, 116 S.Ct. 1657, 1661–62, 134 L.Ed.2d 911 (explaining, *inter alia,* that *de novo* appellate review of probable cause and reasonable suspicion tends to unify precedent, even though one determination will seldom be useful precedent for another); *S.J.,* 551 Pa. at 652, 713 A.2d at 52 (Cappy, J., concurring)(stating that "I would find here that the potential for abuse is outweighed by the very real danger officers face on the streets every day"). In any event, allegations of police excesses can be adequately addressed in individual cases.

As a further policy consideration, Zhahir argues that, because trial courts and the Superior Court have taken judicial notice that those who traffic in narcotics may be armed, *see, e.g., Commonwealth v. Patterson,* 405 Pa.Super. 17, 22, 591 A.2d 1075, 1078 (1991), a threshold requirement for a frisk has been eliminated in a broad category of cases, thereby lessening the protection afforded by adherence to *Terry's* limitations. As previously noted, while the trial court and Superior Court did employ a broad form of the "guns follow drugs"

presumption in this case, their reasoning in this regard does not impact directly upon the validity of the frisk, as the officers were independently justified in their actions by other circumstances. Nevertheless, as a general policy consideration, taking judicial notice that all drug dealers may be armed as in and of itself a sufficient justification for a weapons frisk clashes with the totality standard, as well as the premise that the concern for the safety of the officer must arise from the facts and circumstances of the particular case. *See generally Maryland v. Buie,* 494 U.S. 325, 334 n. 2, 110 S.Ct. 1093, 1098 n. 2, 108 L.Ed.2d 276 (1990)(noting that the Court in *Terry* considered the myriad of situations that confront officers and the risks that inhere when an officer confronts an individual, even in a high crime area, and despite such concerns, the Court required reasonable suspicion before allowing a frisk for weapons). For example, in *Richards v. Wisconsin,* 520 U.S. 385, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997), the United States Supreme Court declined to create a blanket exception to the knock-and-announce rule in felony drug cases based upon the connection between drugs and violence, stating:

First, the exception contains considerable overgeneralization. For example, while drug investigation frequently does pose special risks to officer safety and the preservation of evidence, not every drug investigation will pose these risks to a substantial degree.

\* \* \*

A second difficulty with permitting a criminal-category exception to the knock-and-announce requirement is that the reasons for creating an exception in one category can, relatively easily, be applied to others. Armed bank robbers, for example, are, by definition, likely to have weapons, and the fruits of their crime may be destroyed without too much difficulty. If a per se exception were allowed for each category in criminal investigation that included a considerable-albeit hypothetical-risk of danger to the officers or the destruction of evidence the knock-and-announce element of

the Fourth Amendment's reasonableness requirement would be meaningless.

*Id.* at 393, 117 S.Ct. at 1421. We find the reasoning of *Richards* persuasive in the present context as well and therefore reject the Superior Court's categorical approach to searches involving suspected narcotics trafficking as overbroad.

■ Nevertheless, the nature of the suspected criminal activity does remain a proper consideration in the totality of the circumstances connected with the decision to frisk in individual cases. *See Terry,* 392 U.S. at 28, 88 S.Ct. at 1883. Where the crime might typically involve violence or the use of a weapon, the decision to frisk may be reasonable. *See generally* 4 Wayne R. LaFave, Search and Seizure, A Treatise on the Fourth Amendment, § 9.5(a), 255–56 (3 rd ed.1996)(identifying such crimes as "robbery, burglary, rape, assault with a weapon, homicide, and dealing in large quantities of narcotics"). Where the suspected offense does not typically involve a weapon, other circumstances must be present. *See generally id.* at 257–58 (citing circumstances involving a bulge in a suspect's pocket or clothing, observation of an object that may be a weapon, sudden movements toward a pocket or place where a weapon could be kept, or backing away to provide time and space to draw a weapon); *Sibron v. New York,* 392 U.S. 40, 74, 88 S.Ct. 1889, 1907, 20 L.Ed.2d 917 (1968)(Harlan, J., concurring). Since, viewed in its proper perspective, the traditional role given to the nature of the suspected crime within the totality of the circumstances assessment is valid, necessary, and subject to appropriate limitations, this consideration, like the other policy matters raised by Zhahir, does not merit rejection of the plain feel doctrine.

■ Having considered the text and history of Article I, Section 8, decisional law from other jurisdictions and pertinent policies, we conclude that neither Fourth Amendment nor Pennsylvania jurisprudence requires the exclusion of evidence obtained during the course of a valid plain feel seizure.

It remains to determine whether the seizure of contraband from Zhahir may be validated under the plain feel doctrine. As noted, while Officer Singletary was lawfully in a position to determine whether Zhahir possessed a weapon, a plain feel seizure is warranted only where the item is immediately apparent as contraband. This Court has treated the phrase "immediately apparent" as essentially coextensive with probable cause, *see E.M.,* 558 Pa. at 34, 735 A.2d at 664; *Stevenson,* 560 Pa. at 354–56, 744 A.2d at 1266, an inquiry which takes into account the totality of the circumstances surrounding the frisk, including, *inter alia,* the nature of the object, its location, the conduct of the suspect, the officer's experience, and the reason for the stop. *See generally State v. Toth,* 321 N.J.Super. 609, 729 A.2d 1069, 1071 (App.Div. 1999). Moreover, an officer's subjective belief that an item is contraband is not sufficient unless it is objectively reasonable in light of the facts and circumstances that attended the frisk. *See generally State v. Bridges,* 963 S.W.2d 487, 494–95 (Tenn. 1997).

In the present case, police were responding to a tip involving narcotics and observed behavior corroborative of the tip's allegation. Furthermore, the frisk occurred in an area noted for drug activity and the officer felt what he immediately perceived as numerous (98) vials of cocaine, which was consistent with cocaine packaging he had encountered in previous narcotics cases. Significantly, given the number and nature of the containers, their presence was not equally consistent with legitimate purposes. *Cf. Stevenson,* 560 Pa. at 357, 744 A.2d at 1267 (concluding that a pill bottle detected in the lining of the defendant's jacket during a frisk following a traffic stop was not immediately apparent as contraband and did not provide probable cause to search the defendant's pocket). Thus, the officer's belief that the vials were readily apparent as contraband was objectively reasonable. *Accord State v. Gubitosi,* 43 Conn.App. 448, 683 A.2d 419, 420–21 (affirming the trial court's determination that 111 crack vials were immediately apparent as contraband), *appeal denied,* 239 Conn. 951, 686 A.2d 127 (1996). Finally, the officer's actions did not

constitute an additional search, as the record discloses that the officer did no more than was reasonable to ensure his safety. *Cf. Dickerson,* 508 U.S. at 378–79, 113 S.Ct. at 2138–39 (concluding that squeezing, sliding and otherwise manipulating the contents of the defendant's pocket constituted an additional search unrelated to the sole justification of the search for the frisk under *Terry* ).

In summary, we adopt the plain feel doctrine as a matter of Pennsylvania law and hold that the seizure of the drugs from Zhahir was permissible under such doctrine.

The order of the Superior Court is affirmed.

Justice NIGRO files a concurring and dissenting opinion.

Justice ZAPPALA files a dissenting opinion in which Chief Justice FLAHERTY joins.

NIGRO, Justice, concurring and dissenting.

I agree with the majority that Article I, Section 8 of the Pennsylvania Constitution does not per se require the exclusion of evidence obtained during the course of a valid plain feel seizure. I disagree with the majority, however, that such a valid seizure occurred in the instant case.

In explaining the plain feel doctrine, this Court has stated:

[In *Minnesota v. Dickerson,* the United States Supreme Court] adopted the so-called plain feel doctrine and held that a police officer may seize non-threatening contraband detected through the officer's sense of touch during a Terry frisk if the officer is lawfully in a position to detect the presence of contraband, the incriminating nature of the contraband is immediately apparent from its tactile impression and the officer has a lawful right of access to the object ... Immediately apparent means that the officer readily perceives, without further exploration or searching, that what he is feeling **is contraband.**

*Commonwealth v. Stevenson/R.A.,* 560 Pa. 345, 744 A.2d 1261, 1265 (2000) (citations omitted) (emphasis added).

I cannot agree with the majority that the immediately apparent requirement of the plain feel doctrine was met in the instant case. Here, Officer Singletary testified that when he grabbed the outside of Appellant's jacket, he felt a large bundle of caps. N.T., 11/9/93, at 12. He then reached into Appellant's pocket and retrieved a plastic baggie containing vials of what was later confirmed to be crack cocaine. *Id.* Unlike the majority, I can make no material distinction between the circumstances of this seizure and the ones this Court found to exceed the scope of the plain feel doctrine in *Stevenson/R.A.* In both cases, the police merely felt material which may or may not be used for packaging controlled substances, which, as we held in *Stevenson/R.A.*, is insufficient to meet the immediately apparent element of the plain feel doctrine. *See Stevenson/R.A.*, 744 A.2d at 1268. Thus, in my view, the seizure of the drugs from Appellant's jacket was not justifiable under the plain feel doctrine and accordingly, I must dissent from that portion of the majority opinion holding otherwise.

ZAPPALA, Justice, dissenting.

Because there was no reasonable suspicion justifying the stop of Appellant, the seized contraband should have been suppressed and the issue involving the application of the plain feel doctrine need not be reached. The majority's holding to the contrary is troubling as it may be interpreted as creating a separate legal standard applicable to citizens present in areas known for criminal activity. As I believe our Constitution protects all citizens equally, I cannot join the majority opinion which deems otherwise commonplace behavior "suspicious and furtive" simply because of the nature of the *unconfirmed* allegation (drug dealing) and the location of the accused.

The majority concedes that the officer's stop of Appellant was based on information his captain received from an anonymous source, that the information did not include a range of details, did not indicate future behavior, was not acted upon immediately and confirmed only the location and description of

the suspect.  Op. at 1157.[1]  It finds that reasonable suspicion existed, however, because Appellant's "suspicious conduct in an area associated with criminal activity provided independent corroboration of the essential allegation of the information and, thus, suggested that criminality may have been afoot." *Id.*

Although there may have been corroboration of the description and location of the accused, corroboration of criminal activity is sorely lacking.  The suspicious behavior cited by the majority is Appellant's observation of the police and subsequent dropping and retrieving of an object in a Chinese restaurant located in a high crime area.  Such conduct could only appear "suspicious" if one accepts as true the unverified allegation that the actor is a drug dealer.  The officers observed no activity that corroborated the anonymous information that Appellant was selling drugs or that he may have been armed with an illegal weapon.  The mere presence of police in a high crime area can create the type of behavior deemed suspicious here.  Had the officers' surveillance continued, they may have observed evidence of drug trafficking.  As they did not, however, the stop of Appellant was illegal and the evidence should have been suppressed.

Unlike information obtained from a known informant whose reputation can be assessed and who can be held responsible if his allegations prove to be fabricated, information from an anonymous source can only be considered reliable if it provides specific facts, which are sufficiently corroborated by the officer.  *Commonwealth v. Jackson,* 548 Pa. 484, 698 A.2d 571, 574 (1997).

1.  The record establishes that the arresting officers received unverified information from their captain that a male, wearing a green jacket and blue jeans, was selling narcotics on a particular street in Philadelphia. The officers did not respond until two and one-half hours later and then observed Appellant in the designated area, standing in front of a Chinese restaurant, wearing clothing matching the description.  The officers observed Appellant enter the restaurant, drop an object upon seeing police and return outside.  Appellant went back into the restaurant and apparently retrieved the object when the police approached.

The United States Supreme Court found corroborating evidence of an anonymous tip lacking in its recent decision in *Florida v. J.L.,* —— U.S. ——, 120 S.Ct. 1375, 146 L.Ed.2d 254, 2000 U.S. LEXIS 2345 (2000). There, the Court examined whether an anonymous tip that a person at a particular location is carrying a gun was sufficient to justify a police officer's stop and frisk of that person.[2]

In finding the anonymous tip insufficient to establish reasonable suspicion to effectuate a stop, the Court relied upon the fact that the tip did not provide predictive information and therefore left the police without the means to test the informant's knowledge or credibility. *Id.* at 1378. It noted that the tip was a "bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information." *Id.* at 1379. The Court went on to hold that a tip must "be reliable in its *assertion of illegality,* not just in its tendency to identify a determinate person." *Id.* at 1379 (emphasis added). It stated that the mere fact that a tip, if true, would describe illegal activity does not mean that the police may make a *Terry* stop without meeting the reliability requirement. *Id.* at 1380.

As in *J.L.,* the anonymous allegation in the instant case did not include predictive information and did not indicate any source of knowledge upon which the information was based. Moreover, although the description of the Appellant may have been corroborated, there was no similar corroboration of any "assertion of illegality." The fact that the tip, if true, described the illegal activity of drug dealing in a high crime area, does not transform the innocent act of dropping and retrieving an object into evidence demonstrating that criminal activity is afoot. Had the officers not received the anonymous information from their captain, Appellant's evasive conduct would not

2. The stop in *J.L.* was premised solely on the information contained in the anonymous tip, while the officers in the instant case relied on the anonymous information as well as Appellant's conduct in dropping and retrieving an object upon seeing police. This distinction is not controlling, however, as the additional information is meaningless unless the unconfirmed report of drug dealing is taken as true.

have alerted them to drug activity. The overriding factor here is that Appellant was in a high crime area and drugs were ultimately recovered. These are impermissible factors upon which to find reasonable suspicion to warrant government intrusion.

Accordingly, I dissent.

Chief Justice FLAHERTY joins this Dissenting Opinion.