J-A28003-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JESUS G. LEON | |
| Appellant | No. 2391 EDA 2013 |

Appeal from the Judgment Entered on August 8, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0006059-2013

BEFORE:  GANTMAN, P.J., WECHT, J., and JENKINS, J.

DISSENTING MEMORANDUM BY WECHT, J.:     **FILED DECEMBER 30, 2014**

The learned Majority holds that the instant investigative detention was supported by reasonable suspicion.  In reaching that conclusion, the Majority relies upon an anonymous report stating that an armed individual was near the intersection of Fairhill Street and Allegheny Avenue in the City of Philadelphia.  Although the Majority classifies this report as highly specific and corroborated, Maj. Mem. at 8, the record reveals that the report was anonymous, offered no predictive information of future events, and was not sufficiently corroborated by the officers.  Accordingly, the Majority's decision, in my view, is inconsistent with binding precedent, which clearly and deliberately requires that an anonymous tip be sufficiently corroborated such that it exhibits sufficient indicia of reliability.  ***Florida v. J.L.***, 529 U.S. 266, 270 (2000); ***Alabama v. White***, 496 U.S. 325, 328 (1990).  Because the

officers here relied upon a report that was unaccompanied by any indicia of reliability, and because I do not share the Majority's willingness to depart from our well-established case law, I respectfully, but adamantly, dissent.

As a preliminary matter, I agree with the Majority that Leon was seized for constitutional purposes at the moment that the police officers exited their vehicle and attempted to curtail his movements by gunpoint. This is so because the relevant inquiry is "whether a reasonable [person] innocent of any crime, would have thought he was being restrained had he been in the defendant's shoes." *Commonwealth v. Jones*, 378 A.2d 835, 840 (Pa. 1977). A reasonable person standing in Leon's shoes would not have felt that he or she was free to depart from the show of potentially lethal force that the officers exhibited.[1]

---

[1] The Commonwealth contends that no seizure occurred because Leon never submitted to the officer's show of authority. Brief for Commonwealth at 15 ("It is precisely because [Leon] fled from the police that he cannot successfully claim that they seized him."). In support of its position, the Commonwealth cites *California v. Hodari D.*, 499 U.S. 621 (1991), in which the United States Supreme Court held that a person is not seized unless he or she yields to an official showing of police authority. *Hodari D.* would be controlling here if our review were limited to the question of whether the police conduct violated the Fourth Amendment to the United States Constitution. However, our own Supreme Court has explained that *Hodari D.* is inconsistent with the concomitant protections afforded by Article I, Section 8 of the Pennsylvania Constitution. *Commonwealth v. Matos*, 672 A.2d 769, 776 (Pa. 1996). Stated differently, our own jurisprudence differs in this analysis from its federal counterpart only with respect to the critical inquiry of whether a seizure has occurred.

It is well-settled that a police officer may, short of an arrest, conduct an investigative detention if the officer has a reasonable suspicion, based upon specific and articulable facts, that criminal activity is afoot. *Terry v. Ohio*, 392 U.S. 1, 21 (1968). The inquiry is an objective one: we analyze whether the facts available to the officer at the moment of the intrusion "warrant a man of reasonable caution in the belief that the action taken was appropriate." *Id.* at 21–22. This assessment, like that applicable to the determination of probable cause, requires an evaluation of the totality of the circumstances, *United States v. Cortez*, 449 U.S. 411, 417 (1981), with a lesser showing needed to demonstrate reasonable suspicion in terms of both quantity or content and reliability. *See White*, 496 U.S. at 330–31.

Here, the officers' suspicion that Leon was carrying a firearm arose not from any observations of their own, but from information supplied by an unknown informant. "Unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity." *J.L.*, 529 U.S. at 270 (citations and quotation marks omitted). For this reason, an anonymous tip may provide the requisite reasonable suspicion for an investigative detention only in very specific and narrowly circumscribed situations. The report must be corroborated sufficiently by investigating officers such that it exhibits sufficient indicia of reliability. *White*, 496 U.S. at 328. The United States

Supreme Court has described the necessary level of corroboration as follows:

> An accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. **The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person.**

*J.L.,* 529 U.S. at 272 (emphasis added).

In *Alabama v. White*, 496 U.S. 325 (1990), the police received an anonymous report stating that White was transporting cocaine. The unknown informant predicted that White would leave an apartment building at a specified time, get into a brown Plymouth station wagon with a broken right taillight lens, and drive to a named motel. *Id.* at 327. The officers' subsequent investigation revealed that the informant had accurately predicted the future movements that White would make. *Id.*

The Supreme Court made clear that, standing alone, the informant's tip would not have justified a *Terry* stop. *Id.* at 329. However, the Court held that the officers' suspicion became reasonable after their surveillance demonstrated that the informant had knowledge of White's future movements. *Id.* at 332 ("We think it also important that . . . the anonymous [tip] contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted."). The Court further

reasoned that an informant's knowledge of a person's future behavior indicates some level of familiarity with that person's affairs, but acknowledged that such familiarity does not necessarily imply that the informant has accurate knowledge of criminal conduct. For this reason, the majority in *White* candidly classified the decision as "a close case." *Id.*

Here, the report relied upon by the police stated only that a Hispanic male who was wearing a "black jacket, orange shirt, blue jeans, and orange and blue sneakers" was armed with a weapon. Notes of Testimony, 7/19/2013, at 5-6. The mere fact that officers subsequently observed that Leon's clothing matched the informant's description is insufficient to corroborate the report. Indeed, the Supreme Court of the United States unequivocally has rejected the notion that corroboration of an anonymous tip can be based upon such readily observable characteristics. *J.L.*, 529 U.S. at 272.

Moreover, unlike in *White*, the anonymous report included no prediction of Leon's future behavior. The Majority overlooks the complete lack of corroboration by focusing upon: (1) the fact that Leon's clothing matched the description provided by the unknown informant, and (2) that officers observed Leon in the reported location. Maj. Mem. at 8. Of course, neither of these facts increases the probability that the informant's tip was reliable "**in its assertion of illegality, not just in its tendency to identify a determinate person.**" *J.L.*, 529 U.S. at 272 (emphasis added). If the level of corroboration in *White* rendered reasonable suspicion "a close

question," then the lack of reasonable suspicion in the instant matter is unmistakable.

Nevertheless, a second avenue exists by which the police may obtain the necessary corroboration of a report from an unknown source. In this regard, corroboration may be supplied by circumstances that are wholly independent of the tip, for example, observation of suspicious conduct by the suspect. *Commonwealth v. Zhahir*, 751 A.2d 1153, 1157 (Pa. 2000) (citing *United States v. Roberson*, 90 F.3d 75, 80 (3d Cir. 1996) (noting that in the context of an anonymous tip, the absence of predictive information would not necessarily invalidate it as a consideration in the totality of the circumstances, if, after corroborating readily observable facts, police had observed the suspect engaging in unusual or suspicious conduct)).

Here, the totality of the circumstances does not demonstrate suspicious and furtive behavior that, when combined with the unsubstantiated tip, would provide "independent corroboration of the [report's] essential allegation." *Zhahir*, 751 A.2d at 1157. In concluding otherwise, the Majority relies upon the fact that officers observed Leon with his hands in his pockets. Maj. Mem. at 8. But, the mere act of shielding one's hands from public view, particularly when a person is outdoors in December, falls short of furtive behavior. *Compare Zhahir*, 751 A.2d 1153 (finding an anonymous report of narcotics trafficking sufficiently corroborated where appellant, upon observing the police, discarded an

unknown item, which he then retrieved after the officers had passed by). The fact that the report, if true, described a male in possession of a firearm, does not transform the innocent act of placing one's hands into one's pockets into evidence demonstrating that criminal activity is afoot.

The Supreme Court of the United States has expressed concern that allowing an anonymous tip, by itself, to justify an investigative detention would permit vindictive persons to expose their enemies to an intrusive and embarrassing police search by falsely reporting that criminal activity is afoot. *J.L.*, 529 U.S. at 272; *Illinois v. Gates*, 462 U.S. 213, 246 (1983). The approach adopted by the Majority similarly would allow uncorroborated tips to serve as a skeleton key to an investigative detention. In the Majority's view, the police may rely upon an uncorroborated report so long as they can also articulate any additional innocent factor—for example that the suspect's hands were concealed in his or her pockets—to form the necessary quantum of reasonable suspicion. Such a result is constitutionally untenable.

For the foregoing reasons, I would find that the totality of the circumstances do not give rise to specific and articulable facts supporting reasonable suspicion that Leon was engaged in or about to engage in criminal activity, and that the investigative detention, therefore, was unconstitutional. Accordingly, I would reverse the trial court's order denying Leon's motion to suppress. The Majority having concluded otherwise, I respectfully dissent.