J-S05012-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                               :           PENNSYLVANIA
                               :
              v.               :
                               :
                               :
                               :
MICHAEL ASFIELD LASHLEY        :
                               :
           Appellant           :   No. 534 WDA 2017

Appeal from the Judgment of Sentence March 20, 2017
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0016003-2015

BEFORE:   OLSON, J., OTT, J., and STRASSBURGER*, J.

MEMORANDUM BY OLSON, J.:                    FILED APRIL 17, 2018

Appellant, Michael Asfield Lashley, appeals from the judgment of

sentence entered on March 20, 2017, following his bench trial convictions for

persons not to possess a firearm, carrying a firearm without a license, and

six counts each of access device fraud and possessing an instrument of

crime.[1]  On appeal, Appellant claims that the trial court erred by denying his

suppression motion because there was no evidence "the police had

reasonable suspicion or probable cause to detain [Appellant], remove him

from his vehicle, frisk him, or arrest him[.]" Appellant's Brief at 3.  We

affirm.

_____

[1] 18 Pa.C.S.A. §§ 6105, 6106, 4106, and 907, respectively.

_____
*   Retired Senior Judge assigned to the Superior Court.

Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is

> limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.

> We may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

> Moreover, it is within the lower court's province to pass on the credibility of witnesses and determine the weight to be given to their testimony.

> Furthermore, our Supreme Court clarified that the scope of review of orders granting or denying motions to suppress is limited to the evidence presented at the suppression hearing.

Commonwealth v. Williams, 176 A.3d 298, 315–316 (Pa. Super. 2017) (internal citations and quotations omitted).

We have reviewed the certified record, the parties' briefs, the relevant law, and the trial court's opinion entered on October 24, 2017. In this case, police were investigating claims of credit card fraud, which were in progress, at multiple GameStop electronic stores in Robinson Township, Pennsylvania. Appellant's co-defendant attempted to purchase a new game console and prepaid credit cards for gasoline with several fraudulent credit cards, while communicating with another person via text message. A store clerk provided video surveillance and a description of Appellant's co-defendant to police. Police proceeded to the parking lot of another nearby GameStop

location shortly thereafter where they encountered Appellant sitting in the driver's seat of an out-of-state rental car.[2]  Police observed Appellant's co-defendant, whom they recognized from the clerk's description and the video surveillance, exit the GameStop and enter the vehicle operated by Appellant. The trial court found that these facts provided the requisite reasonable suspicion to conduct an investigatory detention of Appellant.  Thereafter, Appellant admitted to police that he had an extensive criminal record and suggested there was illegal contraband in the vehicle.  The trial court found these facts supported a protective frisk.  Police asked Appellant to get out of the vehicle, noticed a small handgun in Appellant's front pocket, and arrested him.  In the search incident to arrest, police recovered 21 fraudulent credit cards with Appellant's name on them.  Based on the foregoing, the trial court denied suppression.  We are bound by the undisputed evidence presented at the suppression hearing and conclude that there has been no error or abuse of discretion in this case.  Because the October 24, 2017 opinion meticulously, thoroughly, and accurately disposes of Appellant's issue on appeal, we affirm it and adopt it as our own. Accordingly, we direct the parties to include the trial court's opinion in all future filings relating to our examination of the merits of this appeal, as expressed herein.

_____

[2] The trial court credited police testimony that individuals involved in credit card fraud typically utilize rental cars to engage in criminal misconduct.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/17/2018

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA,        CRIMINAL DIVISION

CC No.: 16003-2015

MICHAEL LASHLEY,                                                            ORIGINAL

Defendant.Crlrnlnal Division
Dept, Of court
Recorde Alleaheny
county, PA.

OPINION

Honorable Thomas E, Flaherty

Copies sent to:

For the Commonwealth/AppeIIee:

Office of the District Attorney
400 Courthouse
436 Grant Street
Pittsburgh, PA 15219

For the Defendant/AppeIIant:

Richard   Narvin,   Esquire
Office of Conflict Counsel
429 Forbes Avenue
Suite 1405
Pittsburgh, PA 15219

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA,CRIMINAL DIVISION

CC NO.: 16003-2015

MICHAEL LASHI.EY,

Defendant.

Flaherty, J.                                                        October 23, 2017

<u>OPINION</u>

Defendant Michael Lashley ("Defendant") appeals from this Court's March 20, 2017 Order of Sentence.

On October 6, 2015, Defendant was charged with one count of person not to posSess a firearm (18 Pa.C,S.A. §6105(a)(I)); one count of carrying a firearm without a license (18 Pa.C.S.A. §6106(a)(1)); seventy-four (74) counts of possessing instruments of crime (18 Pa.C.S.A, §907(a)); one count 01 criminal conspiracy with a target offense of possessing instruments of crime (18 Pa.C.S.A. §9()3); seventy-four ('74) counts of access device fraud (18 Pa.C.S.A. §4106(a)(3)); one count of criminal conspiracy with a target offense of access device fraud (18 Pa.C.S.A. §903); and onc count of driving on a suspended license (75 Pa.C.S,A. §1543(a)).

A supprcssion hearing was held on October 6, 2016. At the conclusion ov the hearing, DelCndant's Motion to Suppress was denied. On November 4, 2016, Defendant's suppression counsel filed a Motion to Withdraw as Counsel. That Motion was granlcd and new counsel was appointed. The matter proceeded to a non-jury trial on March 20, 2017. Thereafter, Defendant was found guilty of one count of person not to possess, one count of carrying a firearm without a license, six counts of possession of instruments of crime, and six counts of access device fraud. Defendant was found not guilty of the remaining 139 counts. Defendant waived a pre-sentence report, and Defendant was sentenced at count one, person not to possess a firearm, to serve four (4) to eight (8) years at a state correctional institution; and at count two, possession of instruments of crime, to serve eight (8) to sixteen (16) months at a State correctional institution consecutive to

2

the sentence imposed at count one. Defendant was given no further penalty at the remaining counts and was granted a total of 422 days of credit for time served. Defendant was eligible for RRRI at both counts, and this was reflected in the sentencing order,

Thereafter, on April 6, 2017, Defendant filed a timely Notice of Appeal'. Defendant was directed to file a ConCise Statement of Errors Raised on Appeal. On April 20, 2017, Defendant filed said Concise Statement wherein he raised the following allegation of error:

1. This Court erred in not granting Defendant's Motion to Suppress because the Commonwealth's evidence was inadequate to demonstrate that the police had reasonable suspicion or probable cause to detain Defendant, remove Defendant from the vehicle in which he was seated, frisk Detendant and, in turn, arrest Dctendant.

Thc lhcts as found by this Court at the suppression bearing arc as follows: Damon Wimmer, an employee at Game Stop in Robinson Town Center, testified that he was working al that location on October 5, 2015. (Supp. T. p. 4). On that date, he received a phone call from a different Game Stop location indicating thal "something suspicious [had] caught their attention, and they said I should keep an eye out to see if •a gentleman matching the description they gave me came in." (Supp. T. p. 4). Their description was "black, around six feet tall, very well dressed, light plaid shirt and khaki pants," whose mouth was also wired shut. (Supp. T. p. 5). A gentleman matching that description did walk into that store. (Supp, T, p. 4). Mr. Wimmer testified that the gentleman walked in with a cell phone in his hand with the note pad open that read, "1 just had surgery on my mouth today, and I can't really talk, and this is What I want." (Supp. T, p. 5). Mr. Witnmer called the other Game Stop location to confirm the description of the gentleman, then called the Robinson Police Department. (Supp. "f. p. 5). This person attempted to purchase a Play Station Four console, valued at approximately $400, and approximately $500 dollars in Shell Gasoline gift cards. (Supp. T. p. 6).

Due to Mr. Wimmer taking too long to procure the console and Shell cards, this person left (Supp,, T. p. 6). Shortly thereafters the Robinson Police arrived, (Supp. T. p. 6). Mr. Wimmerprovidedthem with a description of this individual. (Supp. T. p. 6). At this time, Mr. Wimmer received a call from a third store, which was located near the Robinson Walmart, who advised that this individual arrived at their store, (T. p. 7),

Mr. Wimmer testified that there are certain "red flags" that alert store clerks to potential credit card fraud operations. The biggest 'Cred flag" is that the individual "wants to buy a high end console or a lot of gift cards" and has multiple credit cards that do not work, (Supp. T. pp. 6, 7-8). Additionally, there tend tobe other "weird things that can occur that are out Of place." (Supp. T, p. 6). In this instance, the other weird thing was the individual "took a picture of the credit card after it didn't work and texted it to someone saying, 'This card didn't work.'" (Supp.

Officer Brad Mermon, a fifteen-year police officer with Robinson Township Police Department, testified that he was on general patrol the night of October 5, 2015. (Supp. T. p, 10). On that evening, he was dispatched to the Game Stop in Robinson Town Center. (Supp. T. p. 10). Upon arrival, he and Officer Magaspoke with Damon Wimmer. (Supp. T. p. Il). Mr. Wimmer provided him with a description of the individual who was in the store, as well as a description of what had happened. (Supp. T. p. 11). After discussing this matter with Mr. Wimmer, both officers viewed the video surveillance depicting the individual involved. (Supp, T. p. 12). As they were leaving, Mr. Wimmer advised that he had just received a call from a third store that the individual had arrived there. (Supp. T. p. 13). Officers Mermon and Maga proceeded to that location and found a white Nissan Altima with Georgia registration. (Supp. T. p. 13). Officer Mermon testified that in his experience, individuals Who are involved in credit card fraud typically use rental vehicles. (Supp. T. p. 13).

A short time later, a male came out of the Game Stop and got into the passenger seat of that white Nissan Altima. (Supp, T. p. 13). This male matched the description given to them by Mr, Wimmer and was identified as being the same individual viewed on the video footage. (Supp, T. p, 13). Officer Mermon pulled up behind that vehicle, activated his emergency red and blue lights, and effectuated a stop of the vehicle. (Supp. T. p. 13). Officer Mermon approached the driver's side of the vehiCIe and noted that there were two individuals in that vehicle, one being Defendant. (Supp. T. p. 14).

Defendant was seated in the driver's seat of the vehicle, and produced a South Carolina driver's license. (Supp. T. p. 14). The passenger, Djeffrey   the individual who had just left the Game Stop, produced a New York driver's license. (Supp. T. p. 14). His mouth was wired shut. (Supp. T. p. 14). While he was waiting for Officer Maga to arrive, he had a "pretty long conversation" with Defendant wherein Defendant admitted to having an extensive criminal history. (Supp. T. p. 14). Defendant was advised that the officers were investigating a credit card fraud case. (Supp. T. p. 15). Officer Mermon asked Defendant if he had anything illegal in the vehicle, and Defendant looked over his shoulder. (Supp. T. pp. 15, 19), Officer Mermon noticed that there were several large shopping bags filled with merchandise in back seat of the vehicle, (Supp. T, p. 15).

After Officer Maga arrived, they asked Defendant to step out of the vehicle and conducted a pat-down for officer safety. (Supp. T. p. 15). As he did so, he noticed a small caliber pistol in his right front jeans pants." (Supp. T. p. 15). Defendant was then placed into handcuffs and detained. (Supp. T. p, 15). In the search incident to arrest, Officer Mermon found a brown wallet in Defendant's back pocket that contained 11 suspected fraudulent Visa cards with his name embossed on them. (Supp. T. p. 16). Under the driver's seat, there was a black wallet with an additional 10 fraudulent Visa cards çontaining his name. (Supp. T. p. 16).

Defendant's sole issue on appeal involves this Court's denial of Defendant's Motion to Suppress. As stated above, Defendant disputes that the Commonwealth provided evidence sufficient to prove that the Robinson Township police had reasonable suspicion or probable cause to detain Defendant.

The Pennsylvania Supreme Court outlined the three levels of interaction between citizens and the police in Commonwealth v. Ellis, 541 Pa. 285 (1995). They stated as follows:

> [tlhe first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve suchcoercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

Commonwealth v. Ellis, 541 Pa. 285, 293-94 (citations omitted). The Pennsylvania Supreme Court set forth the analysis of investigatory detentions in Commonwealth v. Zhahir, 561 Pa. 545 (2000). In Zhahir, the Court stated as follows.'

> Regarding the stop, a police officer may, short of an arrest, conduct an investigatory detention if he has a reasonable Suspicion based on specific and articulable facts, that criminality is afoot. The fundamental inquiry is an objective one, namely, whether the facts available to the officer at the moment of the intrusion warrant a man of reasonable caution in the belief that the action was appropriate. This assessment, like that applicable to the determination of probable cause, requires an evaluation of the totality of the circumstances, with a lesser showing needed to demonstrate reasonable suspicion in terms of both quantity or content and reliability.

Commonwealth v. Zhahir, 561 Pa. 545, 552 (citations omitted).

As detailed in the factual summary above, Mr. Wimmet advised the police of the specific actions of an individual; provided police with video footage showing the police officers the identity of an individual alleged to be attempting credit card fraud; and told the policethat that individual

6

was communicating with another individual regarding the credit card being declined. Officer Mermon testified that in his experience individuals involved with credit card fraud typically utilize rental cars to engage in their Criminal conduct. Officer Mennon found an out-of state vehicle in the parking lot, and watched the vehicle to see what happened. Officer Mermon observed the individual he saw on the video footage exit the Game Stop near Walmart and enter the white Nissan Altima that was being operated by Defendant. These facts provide Officer Mermon with the requisite reasonable suspicion to conduct an investigatory detention of

Defendant,

Defendant also raises the issue of whether Officer Mermon testified to facts sufficient to support a stop and frisk. The Zhahir Court addressed this issue as follows:

> [r]eview of an officer's decision to frisk for weapons requires balancing two legitimate interests: that of the citizen to be free from unreasonable searches and seizures; and that of the officer to be secure in his personal safety and to prevent harm to others. To conduct a limited search for concealed weapons, an officer must possess a justified belief that the individual, whose suspicious behavior he is investigating at close range, is armed and presently dangerous to the officer or others. In assessing the reasonableness of the officer's decision to frisk, we do not consider his unparticularized suspicion or hunch, but rather the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.

Zhahir, 561 Pa. at 554 (citingDunaway New York, 442 U.s. 200, 209, 99 s.Ct. 2248, 2255, 60 L.Ed.A.2d 824 (1979) and Terry v. Ohio, 392 U.s. 1, 24, 88 s.ct. 1868, 1881 (1968)). As testified to by Officer Marmon, during his investigatory detention of Defendant he had a "pretty long conversation" with Defendant wherein Defendant admitted to having an extensive criminal history. (Supp. T. p. 14). When asked if he had anything illegal in the vehicle, Defendant did not respond in words, but he looked over his back shoulder and pointed to the back of the car. (Supp. T. pp. 15, 19), Although Defendant denied possessing weapons, given the totality of the

circumstances, Officer Mermon had reason to believe Defendant was armed. As such, the Stop and frisk was appropriate.

Additionally, during his discussion with Defendant, Officer Mermon established probable cause to effectuate an arrest of Defendant. Thus, any search conducted of Defendant would be considered to be a search incident to arrest. The following test was established by the Pennsylvania Supreme Court to determine whether probable cause exists in a particular case:

> [p]robable Cause is made out when the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution fri the belief that the suspect has committed or is committing a crime. The question we ask is not whether the officer's belief was correct or more. likely true than false. Rather, we require only a probability, and not a prima facie showing, of criminal activity. In determining whether probable cause exists, we apply a totality of the circumstances test.

com. v. Martin, 627 Pa. 623, 648-49, 101 A.3d 706, 721 (2014) (emphasis in original). Based upon the testimony of Mr. Wimmer and Officer Mermon, there was sufficient trustworthy information to suspect Defendant committed a crime. AS such, there was probable cause to arrest Defendant.

A search incident to arrest is an exception to the warrant requirement and "permits a search of the arrestee person as a matter of course—and without a 'case-by-case adjudication of whether a search of a particular arrestee is likely to protect officer safety or evidence.'" Commonwealth v. Simonson, 148 A.3d 792, 799 (Pa. Super. 2016) (citing Birchfield v. North Dakota, 136 S.Ct. 2160 (2016)). As Officer Mermon had probable cause to arrest Defendant, and was effectuating a lawful arrest, he was entitled to conduct a search incident to arrest. Based upon the foregoing, this Court's March 20, 2017 Ordet of Sentence should be affirmed.

BY THE COURT:

8

Thomas E. Flanaghan