J-S43009-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| EVARISTO MEIRINO, | |
| Appellant | No. 1730 EDA 2014 |

Appeal from the Judgment of Sentence of May 16, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0010557-2013

BEFORE:  GANTMAN, P.J., PANELLA AND OLSON, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED SEPTEMBER 15, 2015**

Appellant, Evaristo Meirino, appeals from the judgment of sentence entered on May 16, 2014 following his bench trial convictions for theft from a motor vehicle, theft by unlawful taking, and receiving stolen property.[1] Upon review, we affirm.

We briefly summarize the facts and procedural history of this case as follows.  On June 14, 2013, at 3:24 a.m., Sergeant Jeremy Brosious of the Philadelphia Police Department received a telephone call reporting a theft from a parked white car at 6th Street and Oregon Avenue in Philadelphia. The caller identified the suspect as a Hispanic male, wearing a green jacket and tan pants, walking northbound from the area.  Sergeant Brosious

_____

[1]  18 Pa.C.S.A. §§ 3934, 3921, and 3925, respectively.

proceeded to the area within five to ten minutes of the telephone call. On 7th Street, coming from the direction of the alleged theft, Sergeant Brosious encountered Appellant, who matched the description given by the caller. Upon seeing the officer, Appellant quickly dropped to one knee near the curb, but then got up and continued walking. Sergeant Brosious commanded Appellant to stop; Appellant complied and put his hands on top of the police car as directed.

Sergeant Brosious frisked Appellant for his safety and, in doing so, felt a hard object inside Appellant's jacket. Once removed, it was apparent that the hard object was a sunglasses case. Sergeant Brosious opened the case to see if it contained a weapon and discovered a pair of women's sunglasses inside. Sergeant Brosious also recovered a screwdriver from the area where he previously saw Appellant kneeling. The screwdriver was dry despite wet weather.

Sergeant Brosious transported Appellant back to the scene of the crime. There, the white vehicle was on the corner as reported. Sergeant Brosious summoned the vehicle owner and she told him that she had left her sunglasses in the center console and that they were now missing. She identified the sunglasses recovered from Appellant as hers. Police arrested Appellant.

The Commonwealth filed the aforementioned charges against Appellant. On October 10, 2013, Appellant filed a motion to suppress the physical evidence recovered. On February 28, 2014, just prior to trial, the

trial court held a hearing and denied relief. The case proceeded to a bench trial, wherein the trial court found Appellant guilty of all the charges. Appellant filed a motion to reconsider on March 12, 2014. On May 16, 2014, the trial court denied Appellant's motion to reconsider and proceeded to sentencing. The trial court sentenced Appellant to a term of two to four years of imprisonment for theft from a motor vehicle; the sentences on Appellant's other convictions merged. This timely appeal followed.[2]

On appeal, Appellant presents the following issue for our review:

> Did not the lower court err by denying [A]ppellant's motion to suppress physical evidence as the police did not have a reasonable suspicion to stop [A]ppellant based on an anonymous radio call, nor reasonable suspicion that [A]ppellant was armed and dangerous to justify frisking [A]ppellant, and the police did not have probable cause to seize the glasses case felt during the illegal frisk of [A]ppellant?

Appellant's Brief at 3.

Appellant argues "[t]he objective facts in this matter did not provide Sergeant Brosious with reasonable suspicion to stop, frisk or search [] [A]ppellant of his closed container." *Id.* at 10-11. More specifically,

_____

[2] Appellant filed a notice of appeal on June 11, 2014. On July 15, 2014, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied on July 17, 2014, but requested additional time to file a supplemental Rule 1925(b) once counsel received all of the notes of testimony. The trial court granted an extension and Appellant filed a supplemental Rule 1925(b) statement on September 8, 2014. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on October 14, 2014.

Appellant contends "an anonymous radio call is insufficient to establish reasonable suspicion even if the police arrive within minutes to find a person matching a detailed description at the exact place the caller said he would be." *Id.* at 12. He claims "police did not corroborate the information in the radio call nor did [A]ppellant engage in any furtive or suspicious activity." *Id.* at 13. Appellant avers that he "bent down along the curb line for a mere moment[,]" but police "never saw anything in [his] hand nor did the officer see [A]ppellant place anything on the ground." *Id.* at 13-14. Thus, Appellant maintains police did not have reasonable suspicion to believe he was engaged in criminal activity to justify an investigatory detention. *Id.* at 14.

Regarding the subsequent frisk, Appellant avers:

[N]othing [A]ppellant did indicated he was armed. There was no information in the radio call that the suspect might have a weapon. The sergeant did not see [A]ppellant carrying anything that appeared to be a weapon nor did the officer see any bulges or weapon-like outlines on his person. Appellant was walking down the street toward a uniformed police officer driving in a marked patrol car. When ordered to stop, [A]ppellant complied placing his hands over his head. Appellant did not attempt to flee or make any furtive movements once in police custody. Finally, the sergeant did not remember asking [A]ppellant any questions before frisking him so there [were not statements by Appellant implying that] he was armed. Instead, the sergeant justified his immediate frisk of [A]ppellant [based] on the time of night, 3:30 in the morning, and that [A]ppellant appeared to match the description in the radio call. These factors did not provide Sergeant Brosious with reasonable suspicion to legitimize the frisk of [A]ppellant.

*Id.* at 15.

- 4 -

Finally, Appellant contends that the search of his jacket was "unwarranted as the glasses case in [his] pocket was not immediately apparent as a weapon or any other type of contraband." *Id.* Thus, he posits the sergeant lacked "probable cause to reach in and remove the case" and "the officer's decision to open the case was entirely without justification." *Id.* at 15-16.

"Once a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." ***Commonwealth v. Wallace***, 42 A.3d 1040, 1047-1048 (Pa. Super. 2012) (*en banc*); ***see also*** Pa.R.Crim.P. 581(H). With respect to an appeal from the denial of a motion to suppress, our Supreme Court has declared:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the ruling of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Eichinger*, 915 A.2d 1122, 1134 (Pa. 2007), *cert. denied*, 522 U.S. 894 (2007)(internal citations omitted).[3]  "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony."  *Commonwealth v. Gallagher*, 896 A.2d 583, 585 (Pa. Super. 2006).

"The Fourth Amendment to the [United States] Constitution and Article I, Section 8 of [the Pennsylvania] Constitution protect citizens from unreasonable searches and seizures."  *Commonwealth v. McAdoo*, 46 A.3d 781, 784 (Pa. Super. 2012).  To safeguard our right to be free from unreasonable searches and seizures, "courts require police to articulate the basis for their interaction with citizens in [three] increasingly intrusive

---

[3] On October 30, 2013, our Supreme Court decided *In re L.J.*, 79 A.3d 1073, 1087 (Pa. 2013).  In *L.J.*, our Supreme Court held that our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing.  *Id.* at 1087.  Prior to *L.J.*, this Court routinely held that, when reviewing a suppression court's ruling, our scope of review included "the evidence presented both at the suppression hearing and at trial."  *See Commonwealth v. Charleston*, 16 A.3d 505, 516 (Pa. Super. 2011), *quoting Commonwealth v. Chacko*, 459 A.2d 311, 317 n.5 (Pa. 1983).  *L.J.* thus narrowed our scope of review of suppression court rulings to the evidence presented at the suppression hearing.

However, *L.J.* declared that the new procedural rule of law it announced was not retroactive, but was rather "prospective generally" – meaning that the rule of law was applicable "to the parties in the case and [to] all litigation commenced thereafter."  *In re L.J.*, 79 A.3d at 1089 n.19.  The current case commenced on February 28, 2014, after *L.J.* was filed, thus, the new procedural rule of law announced in *L.J.* applies to the case at bar.  *See id.*

situations." **McAdoo**, 46 A.3d at 784. Our Supreme Court has categorized these three situations as follows:

> The first category, a mere encounter or request for information, does not need to be supported by any level of suspicion, and does not carry any official compulsion to stop or respond. The second category, an investigative detention, derives from **Terry v. Ohio**[4] and its progeny: such a detention is lawful if supported by reasonable suspicion because, although it subjects a suspect to a stop and a period of detention, it does not involve such coercive conditions as to constitute the functional equivalent of an arrest. The final category, the arrest or custodial detention, must be supported by probable cause.

**Commonwealth v. Smith**, 836 A.2d 5, 10 (Pa. 2003).

Here, there is no dispute that Appellant was subjected to an investigatory detention. Hence, the detention was lawful if supported by reasonable suspicion. We have explained:

> Our Supreme Court has mandated that law enforcement officers, prior to subjecting a citizen to an investigatory detention, must harbor at least a reasonable suspicion that the person seized is then engaged in unlawful activity. The question of whether reasonable suspicion existed at the time of an investigatory detention must be answered by examining the totality of the circumstances to determine whether the officer who initiated the stop had a particularized and objective basis for suspecting the individual stopped. Thus, to establish grounds for reasonable suspicion, the officer must articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that

_____

4 **Terry v. Ohio**, 392 U.S. 1 (1968).

criminal activity was afoot and that the person he stopped was involved in that activity.

Although a police officer's knowledge and length of experience weigh heavily in determining whether reasonable suspicion existed, our Courts remain mindful that the officer's judgment is necessarily colored by his or her primary involvement in the often competitive enterprise of ferreting out crime. Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of the intrusion warrant a man of reasonable caution in the belief that the action taken was appropriate. This inquiry will not be satisfied by an officer's hunch or unparticularized suspicion.

**Commonwealth v. Reppert**, 814 A.2d 1196, 1203-1204 (Pa. Super. 2002)

(*en banc*) (internal quotations, citations, corrections, and emphasis

omitted).

"To have reasonable suspicion, police officers need not personally observe the illegal or suspicious conduct, but may rely upon the information of third parties, including 'tips' from citizens." **Commonwealth v. Lohr**, 715 A.2d 459, 461 (Pa. Super. 1998). With respect to third-party "tips," we have held:

Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Both factors – quantity and quality – are considered in the "totality of the circumstances – the whole picture," that must be taken into account when evaluating whether there is reasonable suspicion. Thus, if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were reliable.

When the underlying source of the officer's information is an anonymous call, the tip should be treated with particular

- 8 -

suspicion. However, a tip from an informer known to the police may carry enough indicia or reliability for the police to conduct an investigatory stop, even though the same tip from an anonymous informant would likely not have done so.

Indeed, identified citizens who report their observations of criminal activity to police are assumed to be trustworthy, in the absence of special circumstances, since a known informant places himself at risk of prosecution for filing a false claim if the tip is untrue, whereas an unknown informant faces no such risk. When an identified third party provides information to the police, we must examine the specificity and reliability of the information provided. The information supplied by the informant must be specific enough to support reasonable suspicion that criminal activity is occurring. To determine whether the information provided is sufficient, we assess the information under the totality of the circumstances. The informer's reliability, veracity, and basis of knowledge are all relevant factors in this analysis.

*Commonwealth v. Barber*, 889 A.2d 587, 593-594 (Pa. Super. 2005) (internal quotations and citations omitted).

"Where [] the source of the information given to the officers is unknown, the range of details provided and the prediction of future behavior are particularly significant, as is corroboration by independent police work." *Commonwealth v. Zhahir*, 751 A.2d 1153, 1157 (Pa. 2000) (citation omitted). "While verification of predictive information constitutes one avenue of obtaining the necessary corroboration of information from a source of unknown reliability, the necessary corroboration may also be supplied by circumstances that are independent of the tip, for example, observation of suspicious conduct on the part of the suspect." *Id.*

Moreover, this Court has determined, "[t]he following factors must be considered in justifying an investigatory stop: the specificity of the description in conjunction with how well the suspect fits the description, the proximity of the suspect to the crime, the time and place of the confrontations, and the nature of the crime being reported." *Commonwealth v. Thompson*, 778 A.2d 1215, 1220 (Pa. Super. 2001); *see also Zhahir*, 751 A.2d at 1157 (citation omitted) ("[T]he time, street location, and the movements and manners of the parties bear upon the totality assessment, as does the officer's experience.").

Here, Sergeant Brosious testified that he worked in the general area of the crime at issue for "just over two and-a-half years." N.T., 2/28/2014, at 8. He further testified that police "received a call for a report of theft in progress occurring at 6th [Street] and Oregon" Avenue by "a Hispanic male, wearing a green [] jacket [and] tan pants, last seen heading northbound on 6th Street[.]" *Id.* at 6. Sergeant Brosious arrived four blocks north of the location, "within five [to] ten minutes." *Id.* He saw Appellant, who matched the description, at that location. *Id.* at 7. There were no other individuals walking on the street. *Id.* at 14. When Appellant "looked up [and] saw the police vehicle, [] he moved quickly over to the curb and dipped down[,]" putting one knee down to the ground and touched the ground. *Id.*

The trial court determined that Sergeant Brosious had reasonable suspicion to stop Appellant "based upon [Appellant's] matching physical description to the flash report, spatial proximity to the scene of the crime,

temporal proximity at the time of the crime, and his suspicious and furtive behavior." Trial Court Opinion, 10/14/2014, at 11. We agree. Viewing the facts in totality, Appellant matched the description given and was found within four blocks from the crime walking in the direction specified by the caller. Police were on the scene within five to ten minutes of the reported crime. Upon seeing the sergeant, Appellant engaged in suspicious activity, dropping to one knee near the curb line. The sergeant had two and a half years of police experience in the vicinity of the crime. Accordingly, based upon the totality of circumstances, we agree the sergeant had reasonable suspicion to believe criminal activity was afoot to justify Appellant's investigative detention.

Regarding the subsequent frisk, we have previously determined:

> Review of an officer's decision to frisk for weapons requires balancing two legitimate interests: that of the citizen to be free from unreasonable searches and seizures; and that of the officer to be secure in his personal safety and to prevent harm to others. To conduct a limited search for concealed weapons, an officer must possess a justified belief that the individual, whose suspicious behavior he is investigating at close range, is armed and presently dangerous to the officer or to others. In assessing the reasonableness of the officer's decision to frisk, we do not consider his unparticularized suspicion or hunch but rather the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.

*Zhahir*, 751 A.2d at 1158 (citations, quotations, brackets and ellipsis omitted). High crime areas, time of night, and furtive movements are

factors to consider in assessing whether a protective frisk was justified. *See*

***Commonwealth v. Scarborough***, 89 A.3d 679, 684 (Pa. Super. 2014).

> Here, the trial court noted:
>> Sergeant Brosious was also justified in performing a protective frisk of [Appellant]. Sergeant Brosious testified that he was very familiar with the 3rd District based upon his two-and-a-half years (2 ½) patrolling the high crime area with burglaries and thefts. […] The violent nature of theft, diminished visibility due to the late hour [(3:30 a.m.)], and suspicious and furtive dipping motion by [Appellant], all contributed to the reasonable assumption that [Appellant] may be armed and dangerous.

Trial Court Opinion, 10/14/2014, at 12.

We discern no abuse of discretion in the trial court's factual assessment, nor any error of law in the legal conclusion drawn from those facts. Based upon the totality of the circumstances, the sergeant had a particularized suspicion that Appellant may be armed. Appellant discounts the fact that he made a furtive movement along the curb line. However, this factor along with the fact that police were responding to a theft in a high crime area at night gave the sergeant reasonable suspicion to believe Appellant was armed. Accordingly, the protective frisk was proper and Appellant is not entitled to relief.

Finally, with regard to the removal and opening of the sunglasses' case from Appellant's jacket pocket, the United States Supreme Court has noted that a protective search must "be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." ***Commonwealth v.***

*Wilson*, 927 A.2d 279, 285 (Pa. Super. 2007), *citing* *Terry*, 392 U.S. at 29. "Following a protective pat-down search of a suspect's person, a more intrusive search can only be justified where the officer *reasonably believed* that what he had felt appeared to be a weapon." *Id.* (citation omitted). "If the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry* and its fruits will be suppressed." *Id.*

Here, Sergeant Brosious testified he "felt a hard object inside [Appellant's] pocket." N.T., 2/28/2014, at 9. He did not know what the object was and was unable to discern whether it was a weapon. When he removed the object he recognized it as a sunglasses case, however, he was still concerned for his safety. He testified as such:

> Well, I saw it was a sunglass case, but through my training, I usually go through some things because I have learned over the years that just because it's what you think is in it doesn't necessarily mean it can't hurt you. I like to open up and just visually see and make sure that whatever's inside there is safe for me […]. I didn't want him to have any weapons or anything else because it was just me and him at the time.

*Id.* at 10.

We conclude Sergeant Brosious' intrusion actions were reasonably designed to discover weapons. He reasonably believed that a weapon could have been secreted inside the sunglasses case. *Compare In Interest of Dixon*, 514 A.2d 165, 167 (Pa. Super. 1986) ("It stretches the bounds of reason to believe that in a *Terry* pat-down, a heart-shaped charm would

reasonably be mistaken for a dangerous weapon.") Hence, we believe the trial court properly determined that the police conducted a legal protective frisk.

However, even if police exceeded the permissible scope of a protective frisk under **Terry**, we would conclude that they would have inevitably have discovered the stolen sunglasses. In describing the doctrine of inevitable discovery, the United States Supreme Court has opined, "[e]xclusion of physical evidence that would inevitably have been discovered adds nothing to either the integrity or fairness of a criminal trial." **Nix v. Williams**, 467 U.S. 431, 446 (1984). This Court has concluded:

> Pennsylvania courts recognize the inevitable discovery doctrine first described by the United States Supreme Court in **Nix v. Williams**, 467 U.S. 431 (1984). That doctrine provides that evidence which would have been discovered was sufficiently purged of the original illegality to allow admission of the evidence. Implicit in this doctrine is the fact that the evidence would have been discovered despite the initial illegality. If the prosecution can establish by a preponderance of the evidence that the illegally obtained evidence ultimately or inevitably would have been discovered by lawful means, then the evidence is admissible. The purpose of the inevitable discovery rule is to block setting aside convictions that would have been obtained without police misconduct. Thus, evidence that ultimately or inevitably would have been recovered by lawful means should not be suppressed despite the fact that its actual recovery was accomplished through illegal actions. Suppressing evidence in such cases, where it ultimately or inevitably would have lawfully been recovered, would reject logic, experience, and common sense.
>
> This exception to the exclusionary rule has been invoked on numerous occasions by Pennsylvania appellate courts as a basis for admitting evidence that was, or was claimed to

have been, illegally obtained by the police or other government investigators. *See, e.g., **Commonwealth v. Van Winkle***, 880 A.2d 1280, 1285 (Pa. Super. 2005) (holding that evidence obtained after officer exceeded permissible scope of weapons frisk was admissible because it fell within the inevitable discovery exception); ***Commonwealth v. Ingram***, [814 A.2d 264, 270 (Pa. Super. 2002)] (deeming evidence obtained as a result of involuntary confession admissible because it inevitably would have been discovered); ***Commonwealth v. Miller***, 724 A.2d 895, 900 n.5 (Pa. 1999) (*citing* ***Nix v. Williams***, *supra*, and noting that even if the evidence found in the defendant's home had been illegally seized, it "would have been admissible because it inevitably would have been discovered"); ***Commonwealth v. Albrecht***, 720 A.2d 693, 702 n.11 (Pa. 1998) (in claim decided under federal and state constitutions, holding that even if warrantless search of defendant's home had been improper, suppression not required because the evidence inevitably would have been discovered); ***Commonwealth v. Garcia***, 661 A.2d 1388 (Pa. 1995) (defendant not entitled to suppression of drugs in his pocket because they inevitably would have been discovered since police lawfully were permitted to search him incident to his arrest); ***Commonwealth v. Hoffman***, [589 A.2d 737, 744 (Pa. Super. 1991)] (finding evidence recovered as a result of illegal search of defendant admissible because it would have been inevitably discovered); ***Commonwealth v. Speaks***, 505 A.2d 310 (Pa. Super. 1986) (evidence regarding discovery of marijuana in defendant's residence properly admitted under inevitable discovery rule).

***Commonwealth v. Gonzalez***, 979 A.2d 879, 890-891 (Pa. Super. 2009) (some citations, all quotations, brackets, and ellipsis omitted).

*Sub judice*, Appellant matched the description of a perpetrator committing a theft from a parked car and engaged in a furtive movement as police approached. Police were justified in stopping and searching Appellant for their protection. Police were further justified in removing the sunglasses

case from Appellant's pocket to see if the hard object was a weapon. Police also recovered a screwdriver from the area where Appellant was seen dipping down. N.T., 2/28/2014, at 22. The screwdriver was dry even though it was raining, establishing the likelihood of recent use and disposal. *Id.* at 23. Even without opening the sunglasses case, as indicated, police were investigating the theft from the white car parked at 6th and Oregon. *Id.* at 14. They located the owner and she verified that the case was from her car. *Id.*

Taken together, the recovered screwdriver, confirmation by the owner that a sunglasses case was missing from her vehicle, along with the additional evidence of time, place, and description of the perpetrator, provided police with probable cause to arrest Appellant. The sunglasses would inevitably have been discovered in a search incident to arrest. Accordingly, for all of the foregoing reasons, denial of suppression was proper.

Judgment of sentence affirmed.
Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/15/2015

- 16 -