J-S04015-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT |
| | : | OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES D. HOWE | : | |
| | : | |
| Appellant | : | No. 1089 MDA 2020 |

Appeal from the Judgment of Sentence Entered August 12, 2020
In the Court of Common Pleas of Centre County
Criminal Division at No:  CP-14-CR-0001142-2019

BEFORE:  OLSON, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY STABILE, J.:                    **FILED AUGUST 03, 2021**

Appellant, James D. Howe, appeals from the August 12, 2020 judgment of sentence imposed by the Court of Common Pleas of Centre County following Appellant's bench trial conviction for use of, or possession with the intent to use, drug paraphernalia.[1]  Upon review, we reverse the denial of suppression and vacate the judgment of sentence.

The facts of this case as found by the trial court established as follows:

> It is undisputed that the stop and frisk of [Appellant] took place on the evening of January [7], 2019, outside [Appellant's] residence in Philipsburg, Centre County, Pennsylvania.  The arresting officer, Trooper Trevor Danko ([]"Trooper Danko"), was at [Appellant's] residence to serve a warrant [on] an individual other than [Appellant].  Trooper Danko testified that[,] when he was knocking on the residence's door to serve the warrant, [Appellant] approached him and his fellow officers from outside the residence.  Trooper Danko testified that, upon shining his

_____

[1] 35 P.S. § 780-113(a)(32).

flashlight on [Appellant], he saw a large black object in [Appellant's] hand, which [Appellant] then hid behind his back when asked to identify it. Trooper Danko testified that his experience as a trained officer led him to consider this concealment of the object as a safety risk. When [Appellant] revealed the object upon request of the officers, Trooper Danko identified it as a joy star shiner Christmas light [projector]. Still believing there to be a risk of harm to himself and his fellow officers, Trooper Danko conducted a pat-down of [Appellant] for weapons. Trooper Danko felt, and immediately recognized through his training and experience, a small smoking device in [Appellant's] pocket. [Appellant] then emptied his pockets, revealing a glass smoking device and a small clear bag with white residue. [Appellant] was arrested and charged with [the aforementioned crime].

Trial Court Opinion, 1/28/20, at 1-2 (unnecessary capitalization omitted).

On October 30, 2019, Appellant filed an *omnibus* pre-trial motion seeking to suppress the evidence and testimony derived from the search of Appellant's person by Trooper Danko on the grounds that Trooper Danko lacked reasonable suspicion that Appellant was armed and dangerous, thereby, resulting in an unconstitutional search of Appellant's person. Appellant's *Omnibus* Pre-Trial Motion, 10/30/19. On January 16, 2020, the trial court entertained argument on Appellant's *omnibus* pre-trial motion. The trial court subsequently denied the motion on January 28, 2020. On August 7, 2020, the trial court, in a non-jury trial, found Appellant guilty of the aforementioned crime. On the same date, the court sentenced Appellant to six months' probation and ordered Appellant to pay the fines and costs of prosecution. This appeal followed.[2]

_____

[2] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issue for our review:

> Did the trial court err in denying [Appellant's *omnibus* pre-trial] motion to suppress, which argued that [Appellant] was subjected to an unconstitutional search as law enforcement lacked proper justification for this search and failed to establish a reasonable belief that [Appellant] had been armed and dangerous at the time of the search?

Appellant's Brief at 7 (unnecessary capitalization omitted).

Our standard and scope of review of a challenge to a suppression court's order denying, or granting, a motion to suppress evidence is well-settled.

> When we review the ruling of a suppression court[,] we must determine whether the factual findings are supported by the record. When it is a defendant who [] appealed, we must consider only the evidence of the prosecution and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. Assuming that there is support in the record, we are bound by the facts as are found and we may reverse the suppression court only if the legal conclusions drawn from those facts are in error.

***Commonwealth v. Hicks***, 208 A.3d 916, 925 (Pa. 2019) (citation omitted).

"As an appellate court, we are not bound by the suppression court's conclusions of law; rather, when reviewing questions of law, our standard of review is *de novo* and our scope of review is plenary." ***Hicks***, 208 A.3d at 925 (citation and original quotation marks omitted). Moreover, our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. ***In re L.J.***, 79 A.3d 1073, 1087 (Pa. 2013).

Here, Appellant contends that Trooper Danko lacked reasonable suspicion that Appellant was armed and dangerous to justify the subsequent

frisk of Appellant's person. Appellant's Brief at 16-31. Appellant contends that, "Trooper Danko was required to set forth on the record specific and articulable facts that would have led a reasonable officer to believe [Appellant] was armed and dangerous at the time of the pat-down for weapons." *Id.* at 21.[3] Appellant asserts that upon Appellant's compliance with Trooper Danko's request to show his hands and the object he was concealing behind his back, and upon Trooper Danko's discovery that the object was a Christmas light projector, "any suspicion that [Appellant] was armed and dangerous [was] dispelled." *Id.* at 30. Appellant contends that to justify the subsequent frisk of Appellant, Trooper Danko needed to articulate specific facts demonstrating a reasonable suspicion that Appellant was armed and dangerous. *Id.* at 30-31. We agree.

The Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and Article I, Section 8 of the Pennsylvania Constitution protect a person from unlawful searches and seizures.[4] Our Supreme Court has long held that although the

---

[3] In so arguing, Appellant does not challenge that Trooper Danko had reasonable suspicion to stop Appellant and request that he produce the object that Appellant concealed behind his person.

[4] The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly

Pennsylvania Constitution provides broader protection from unreasonable searches and seizures than the United States Constitution, the **Terry** doctrine, announced in the seminal case of **Terry v. Ohio**, 392 U.S. 1 (1968), "sets forth the reasonableness standard for Article I, [Section] 8 of the Pennsylvania Constitution." **Hicks**, 208 A.3d at 925, 940 ("the **Terry** doctrine unequivocally requires something suggestive of criminal activity before an investigative detention may occur").

> **Hicks** explained the distinction between a mere encounter and an investigative detention as follows:

> [W]arrantless interactions between citizens and police officers fall into three categories, distinguished one from another by consideration of whether the citizen has been "seized" within the meaning of the Fourth Amendment, the intrusiveness and extent of the seizure, and the justification therefor. The first type of interaction - a mere encounter - does not constitute a seizure. It generally involves a request for information and requires no particular suspicion of criminality because it carries no official compulsion to stop or to respond. During a mere encounter, as long as the person to whom questions are put remains free to

---

> describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV. The Pennsylvania Constitution provides:

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

PA CONST. art. I, § 8.

disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification.

We recognize only two types of lawful, warrantless seizures of the person, both of which require an appropriate showing of antecedent justification: first, an arrest based upon probable cause; second, a[n investigative detention] based upon reasonable suspicion. Here, we are concerned with this latter type of seizure - interchangeably labeled an "investigative detention," a "***Terry*** stop," or, when coupled with a brief pat-down search for weapons on the suspect's person, a "stop and frisk."

To maintain constitutional validity, an investigative detention must be supported by a reasonable and articulable suspicion that the person seized is engaged in criminal activity and may continue only so long as is necessary to confirm or dispel such suspicion. The asserted grounds for an investigative detention must be evaluated under the totality of the circumstances. So long as the initial detention is lawful, nothing precludes a police officer from acting upon the fortuitous discovery of evidence suggesting a different crime than that initially suspected[.] However, an unjustified seizure immediately violates the Fourth Amendment rights of the suspect, taints the evidence recovered thereby, and subjects that evidence to the exclusionary rule.

***Hicks***, 208 A.3d at 927-928 (citations, original quotation marks, and original brackets omitted). The reasonable suspicion standard allows "a police officer to stop an individual based upon [`]specific and articulable facts['] and [`]rational inferences from those facts['] that warrant a belief that the individual is involved in criminal activity." ***Id.*** at 932 (citation and original quotation marks omitted). "A ***Terry*** frisk is a type of investigative detention requiring reasonable suspicion that criminal activity is afoot **and** that the individual whose suspicious behavior [the police officer] is investigating at close range is armed and presently dangerous to the [police] officer or to

others." ***Commonwealth v. Davis***, 102 A.3d 996, 999 (Pa. Super. 2014) (citation and original quotation marks omitted, emphasis added). "The [police] officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent [person] in the circumstances would be warranted in the belief that his[, or her,] safety[,] or the safety of others[,] was in danger." ***Commonwealth v. Cooper***, 994 A.2d 589, 592 (Pa. Super. 2010) (citation omitted). "The purpose of a ***Terry*** frisk is not to discover evidence of a crime, but to protect the police officer conducting the investigation." ***Davis***, 102 A.3d at 999.

Pennsylvania courts have long held that, "[i]f, during the course of a valid investigatory stop, [a police] officer observes unusual and suspicious conduct on the part of the individual which leads [the police officer] to reasonably believe that the suspect may be armed and dangerous, the [police] officer may conduct a pat-down of the suspect's outer garments for weapons." ***Commonwealth v. E.M.***, 735 A.2d 654, 659 (Pa. 1999). "Such a frisk, permitted without a warrant and on the basis of reasonable suspicion less than probable cause, must always be strictly 'limited to that which is necessary for the discovery of weapons which might be used to harm the [police] officer or others nearby.'" ***Id.*** (quoting ***Minnesota v. Dickerson***, 508 U.S. 366, 373 (1993)).

Here, the suppression court, in denying Appellant's *omnibus* pre-trial motion to suppress, found,

[Appellant] acted in a suspicious manner upon interacting with Trooper Danko. . . . [Appellant] was moving toward the officers[] and concealed an unidentified dark object behind his back once Trooper Danko interacted with him. [The trial] court finds that the actions of [Appellant,] as observed by Trooper Danko in light of the surrounding circumstances and his experience and training, could create the requisite reasonable belief that [Appellant] may have been armed and dangerous[.]

Trial Court Opinion, 1/28/20, at 3.

The record demonstrates that at 8:17 p.m. on January 7, 2019, Trooper Danko, along with two other officers, were at Appellant's residence for the purpose of serving a warrant on a person other than Appellant but who was believed to be at Appellant's residence. N.T. Suppression, 1/16/20, at 4-5, 12-13, 18.[5] Trooper Danko testified that while the officers were attempting to serve the warrant,[6] he was positioned on the sidewalk outside Appellant's residence, and he noticed an individual, later identified as Appellant, walking towards him. *Id.* at 5. Appellant was not yelling or rushing towards him but was walking towards the front door of his residence. *Id.* at 13. The area of the encounter was "dark" and illuminated only by a nearby traffic light.[7] *Id.*

---

[5] We note that the suppression hearing transcript contains three pages of testimony (pages marked 34-36) that pertain to a matter other than the instant case. These pages are disregarded for purposes of this disposition.

[6] Trooper Danko stated that the officers had the residence "pretty well surrounded" and Appellant was approaching the front door as Trooper Danko was knocking on the door of Appellant's residence. *Id.* at 5.

[7] The Commonwealth concedes that "the record does not contain information concerning whether the area was a high[-]crime area." Commonwealth Brief at 12.

at 5, 17. Due to this darkness, the trooper used a flashlight to see Appellant. *Id.* at 17. Appellant was holding a "big black object" in his right hand, which Trooper Danko described as "the size of a softball" with an attachment that resembled a tent stake. *Id.* at 5-6, 13-14. The object did not appear to have a handle. *Id.* at 6, 14. Trooper Danko asked Appellant what was in his hand. *Id.* at 6. In response, Appellant put "his hand behind his back." *Id.* at 6, 14. Trooper Danko approached Appellant and "made him show his hands[,]" and Appellant complied by putting his hands in front of him. *Id.* at 7. Trooper Danko retrieved the item and discovered it was a "Christmas light[] star shiner" projector used to project a light display on a house. *Id.* at 7-8, 14. Appellant told the trooper that he found it in a trashcan a couple blocks away. *Id.* at 10. Trooper Danko believed the item to be stolen based upon the moist dirt that was still attached to the projector stake, consistent with a stake that was just removed from the ground.[8] *Id.* at 11.

Trooper Danko "patted [Appellant] down for weapons." *Id.* at 8. He explained his reasons for frisking Appellant as follows:

> [COMMONWEALTH:] And why did you pat [Appellant] down for weapons after you recovered the [Christmas light projector] from him?
>
> [TROOPER:] For my safety.

---

[8] Although several news releases were issued in an attempt to locate a victim of the suspected theft, no victim came forward, and no other evidence demonstrated that the Christmas light projector was stolen. *Id.* at 11.

[COMMONWEALTH:]     And why were you concerned for your safety?

[TROOPER:]          Because [Appellant,] obviously, was hiding something behind his back before. I don't know if that object was – what that object was. I – well, after I [discovered what the object was,] there still could have been something behind his back that he was reaching for. Does that make sense?

*Id.* at 17-18. Other than Appellant positioning the large black object behind his back upon encountering Trooper Danko, Trooper Danko did not state that Appellant moved, or attempted to move, towards an object behind his back, in his pockets, or anywhere else on his person. Trooper Danko stated, however, that based upon his experience, when an individual has an object in his hands and conceals it behind his back, this presents a safety concern because the concealed object may be a weapon. *Id.* at 7, 18.

When patting down Appellant's outer garments for weapons, Trooper Danko felt an object in Appellant's "front left pocket" that "was apparent to [him] to be a smoking device" used for the purpose of ingesting a controlled substance.[9] *Id.* at 8-9. Trooper Danko asked Appellant about the contents of his pocket and Appellant removed a green smoking device from his front left pocket. *Id.* at 9. Trooper Danko "emptied [Appellant's] pockets" and

_____

[9] Trooper Danko testified that, upon retrieval and examination, the green smoking device contained a residue "consistent with controlled substances" but the origin of the residue was not identified at the suppression hearing. *Id.* at 12.

- 10 -

discovered an empty plastic inch-by-inch bag that contained some "white powder residue."[10]  *Id.* at 9-10.

Trooper Danko's initial inquiry concerning what Appellant was holding in his hands was a mere encounter, since the trooper did not order Appellant to stop or issue any other commands.  *Hicks*, 208 A.3d at 927 ("as long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification").  Thus, Appellant remained free to disregard Trooper Danko's request for information and walk away, and this specific interaction did not intrude on his liberty or require particularized or objective justification.

This mere encounter transformed into an investigative detention when Appellant, who initially concealed the item in his possession, produced the Christmas light projector upon Trooper Danko's request.  At that point, Trooper Danko formulated reasonable suspicion, based upon the totality of the circumstances, that Appellant stole the item, since Appellant concealed the item when he was asked about it, and the moist soil on the projector's stake indicated it had recently been dislodged from the ground.  Trooper Danko's reasonable suspicion that criminal activity was afoot permitted him to stop and detain Appellant for investigatory purposes.  *See id.* ("an

_____

[10] The Commonwealth did not introduce evidence identifying the origin of the "white powder residue" in the empty plastic bag or the residue found on the green smoking device.

investigative detention must be supported by a reasonable and articulable suspicion that the person seized is engaged in criminal activity and may continue only so long as is necessary to confirm or dispel such suspicion").

The Commonwealth contends that Trooper Danko not only had reasonable suspicion that criminal activity was afoot but also had the authority to frisk Appellant for weapons, since Appellant's furtive concealment of the contents in his hands created reasonable suspicion that he was armed and dangerous. We disagree.

While we understand and appreciate the trooper's concerns for his safety, his decision to frisk Appellant rested more on a hunch than a reasonable belief or suspicion that he was armed and dangerous.

In **Commonwealth v. Grahame**, 7 A.3d 810 (Pa. 2010), our Supreme Court noted:

> The **Terry** case created an exception to the requirement of probable cause, an exception whose "narrow scope" [the U.S. Supreme] Court "has been careful to maintain." Under that doctrine a law enforcement officer, for his own protection and safety, may conduct a patdown to find weapons that he reasonably believes or suspects are then in the possession of the person he has accosted. . . . Nothing in **Terry** can be understood to allow a generalized "cursory search for weapons" or, indeed, any search whatever for anything but weapons. The "narrow scope" of the **Terry** exception does not permit a frisk for weapons on less than reasonable belief or suspicion directed at the person to be frisked[.]

**Id.** at 815 (quoting **Ybarra v. Illinois**, 444 U.S. 85, 93-94 (1979)).

"In order to assess whether a reasonable belief existed, consideration is given to the specific reasonable inferences which the officer can draw from

the facts in the light of his experience but no consideration is given to his unparticularized suspicions or hunches." ***In re J.V.***, 762 A.2d 376, 380 (Pa. Super. 2000) (citation omitted). "To justify a frisk incident to an investigatory stop, the police need to point to *specific and articulable* facts indicating the person they intend to frisk may be armed and dangerous; otherwise, the talismanic use of the phrase 'for our own protection,' a phrase invoked by the officers in this case, becomes meaningless." ***Commonwealth v. Myers***, 728 A.2d 960, 963 (Pa. Super. 1999) (emphasis in original).

Significantly, "while reasonable suspicion of unlawful activity is sufficient to justify a forcible stop, it does not necessarily justify a frisk for weapons. . . Only when the officer reasonably believes the suspect may be armed and dangerous is a weapons frisk appropriate." ***Commonwealth v. Mackey***, 177 A.3d 221, 227 (Pa. Super. 2017); ***see also Commonwealth v. Brown***, 2020 WL 6335982 (Pa. Super. 2020). The nature of the suspected criminal activity is relevant to the decision whether to frisk. ***Commonwealth v. Zhahir***, 751 A.2d 1153, 1162 (Pa. 2000). "Where the crime might typically involve violence or the use of a weapon, the decision to frisk may be reasonable." ***Id.*** Where the suspected offense does not typically involve a weapon, other circumstances must be present, such as, for example, a bulge in the suspect's pocket or clothing, observation of an object that may be a weapon, sudden movements toward a pocket or place where a weapon could be kept, or backing away to provide time and space to draw a weapon. ***Id.*** at 1162-63.

Instantly, Trooper Danko did not articulate

> any specific reason that would suggest Appellant was armed and dangerous, stating only in general terms that he frisked Appellant for his safety[.] Under the current state of the law in this Commonwealth, such a general statement does not provide a sufficient basis for conducting a frisk incident to an investigatory stop.

*Commonwealth v. Cooper*, 994 A.2d 589, 594 (Pa. Super. 2010). While Appellant's conduct in hiding the Christmas light projector provided reasonable suspicion to believe that Appellant was involved in criminal activity, nothing Appellant did suggested that he was armed or dangerous. He promptly and unequivocally complied with all of Trooper Danko's requests, including the request to show his hands. After that, Appellant did not do or say anything indicating that he was armed or dangerous. N.T. Suppression, 1/16/20, at 13-14. Furthermore, Appellant was not being investigated for an offense involving a weapon or a crime of violence. The trooper was merely investigating the suspected theft of a Christmas light projector. Finally, it is worth noting that the Appellant's residence was not noted as being located in a high-crime area, and the officers had the residence surrounded because they were executing a warrant nearby.

In short, Trooper Danko had reasonable suspicion to conduct an investigatory detention, but he lacked reasonable suspicion to believe that Appellant was armed or dangerous or to frisk Appellant for weapons. As a result, the items discovered and seized during the search are the fruit of the poisonous tree which the trial court should have been suppressed. *Brown*,

2020 WL 6335982, *7 (suppressing evidence where officer lacked reasonable suspicion to conduct frisk).

Order denying suppression reversed. Judgment of sentence vacated. Case remanded for further proceedings consistent with this decision. Jurisdiction relinquished.

Judge Musmanno joins the memorandum.

Judge Olson files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/3/2021